PETER G. OLIVER and others *v.* JAMES H. STEVENS, Sheriff, and another.

The purchaser of property sold under an order of seizure subject to a previous mortgage, will be responsible only for the amount of such mortgage, and any surplus he may have bid above that amount. And where such previous mortgage is revoked so far as a third person is concerned, and his claim declared to have precedence on the proceeds of the mortgaged property, the amount due from the purchaser on account of the mortgage, will be first applied to the settlement of that claim, and the balance only will belong to the holder of the mortgage.

Every one is bound, at his peril, to know the law applicable to his case; if he misapprehends it, he must take the consequences. He cannot make his own mistakes a ground to defeat the legal rights of others.

ACTION before the District Court of Catahoula, *King,* J., by Peter G. Oliver, James Woodburn, John V. Robertson, and Sarah Schilling, administratrix of John Warfield, and tutrix of his minor heirs, against James H. Stevens, sheriff of the parish of Catahoula, and Joseph H. D. Bowmar, to enjoin an execution issued on a twelve months' bond, executed by the plaintiffs in favor of Bowmar, for certain property purchased at a sale by the sheriff under an order of seizure. The injunction was dissolved with damages, and Woodburn and Schilling appealed.

*Garrett,* for the appellants.

*McGuire,* for the defendants.

MORPHY, J. The plaintiffs, as principal and sureties on a twelve months' bond, enjoined an execution issued upon the bond at the instance of the defendant Bowmar. The facts out of which this controversy grows, are as follows: On the 8th of July, 1837, Charles S. Abercrombie had a conventional mortgage recorded in the office of the parish judge of Ouachita against Robert H. Bowmar, his brother-in-law, for the sum of $10,135, with ten per cent interest per annum, from the 18th of May, 1837. Bernard Hemken and Joseph H. D. Bowmar brought suit against Robert Bowmar for debts respectively due to them. At the same term of the court, they both obtained judgments against their debtor, which were signed on the same day. Joseph H. D. Bowmar had his judgment recorded in the office of the parish judge on the 27th of March, 1838, and Hemken had his recorded on the following day. In his

suit against Robert Bowmar, Hemken had made Abercrombie a party, and had prayed for and obtained a judgment revoking and setting aside his conventional mortgage, on the ground that his claim was fictitious and simulated, and that this mortgage was executed for the purpose of defrauding the creditors of Bowmar, and of placing his property out of their reach and pursuit. This judgment was affirmed by this court on an appeal brought at the last October term. See 16 La., 367.

While these proceedings were going on. between Hemken and Abercrombie, and before the rendition of the judgment in the appellate court, Joseph H. D. Bowmar took out an execution under his judgment against Robert Bowmar, seized upon the mortgaged property, and caused it to be sold subject to Abercrombie's mortgage. At this sale Peter G. Oliver bought the property for the sum of $14,135. After deducting Abercrombie's mortgage, which was the only one taking precedence of the judgment of the seizing creditor, according to the certificate of the recorder of mortgages, Oliver gave his twelve months' bond for the surplus, to wit: $1789 96, with James Woodburn, John Warfield, and John V. Robertson, as sureties, and this is the bond now sued on. Shortly after the judgment of the district court in favor of Hemken, annulling and setting aside Abercrombie's mortgage on Robert Bowmar's property, was affirmed by this tribunal, they both joined in an hypothecary action against Peter G. Oliver, as a third possessor ; they prayed that the mortgaged property might be seized and sold to satisfy, first, Hemken's judgment for $3,506 62, with ten per cent interest from the 1st of January, 1837; till paid ; and secondly, Abercrombie's mortgage of $10,135 08, with corresponding interest. The district court directed an order of seizure and sale to issue according to this prayer, unless within ten days after demand, Oliver should pay these two sums with interest and costs. Being thus ordered to pay a larger amount than he had agreed to give for the property, *Oliver* surrendered the whole of it, to satisfy the decree of the court.

It is urged on the part of the plaintiffs and appellants, that the bond sued on is invalid, in as much as the purchase was made and the bond given in error ; that the only mortgage or claim, of which the purchaser had notice as standing before that of the judgment

creditor, at whose suit the property was sold, was the one in favor of Abercrombie ; that no allowance was made for Hemken's claim, which was subsequently declared to take precedence of Abercrombie's mortgage; that this claim of Hemken, amounting to $3506 62, with interest from the 1st of January, 1837, when added to that of Abercrombie with the interest accruing on it, forms a sum much larger than that which was bid by Oliver, who would not have bought the property, had he known of this additional incumbrance on it.    That in fact no adjudication had or could take place, the property not having brought a sum sufficient to discharge the mortgages entitled to a preference over the judgment creditor, at whose suit it was seized and offered for sale.    It does not appear to us, that in this case there was any error or mis-apprehension as to the facts existing at the time of the purchase., No other mortgage than that of Abercrombie had precedence of that of Joseph H. D. Bowmar, and the bond of Oliver was given only for the surplus.    But this purchaser, when sued as a third possessor, seems to have entirely mistaken the legal consequences of the judgment obtained by Hemken in his revocatory action against Abercrombie.    He supposed that it had the effect of subjecting the property he had acquired, to both the mortgages of Hemken and Abercrombie for their full amount.    Such appears to have been also the opinion of all the parties concerned, and even of the district judge ; but it is clear that this judgment could not affect the rights or change the position of the creditor holding the mortgage coming immediately after that of Abercrombie.    It could not increase the amount of mortgages having a preference over his.    Its only effect was to make Abercrombie's mortgage yield to that of Hemken's, and to entitle the latter to be paid in preference to the former out of the first money made by a sale, or paid by the third possessor of the slaves mortgaged.    If instead of being seized and sold in the suit of Joseph H. D. Bowmar, the property had remained in the possession of Robert Bowmar, and upon being sold to satisfy these several mortgages, it had brought more than $10,135 08, with the interest and costs, Joseph H. D. Bowmar would have been privileged upon the excess over Hemken, had the latter's claim been larger than that of Abercrombie, whose mortgage in that event would have been superseded by or merged in that of Hemken.    In the case

supposed, Hemken could have received the balance of his claim only after Joseph H. D. Bowmar's mortgage was satisfied, having had his judgment recorded one day after the latter. If on the contrary, the slaves had brought only $10,135, Abercrombie would have been entitled to the balance remaining after satisfying Hemken's claim, in preference to Joseph H. D. Bowmar, because his mortgage remained in full force as to the latter, and was avoided only as to its effects on Hemken, the complaining creditor. Civ. Code, 1972.

It is not in our power to relieve the principal plaintiff in injunction from the consequences of his mis-apprehension of the law and of his own rights. He was not bound to pay as third possessor more than $12,345 04, the amount retained in his hands by reason of the special mortgage in favor of Abercrombie. He could have enjoined the executory proceedings, and tendered the above amount to the seizing creditors. Instead of doing so, he suffered the slaves to be sold, and they brought only $4310 66, an amount hardly sufficient to pay the debt of B. Hemken, with interest and costs. He and his sureties cannot any more avoid the payment of his bond, than if upon the hypothecary action of Abercrombie alone he had surrendered the property, instead of paying the debt. This case may appear a hard one as to Peter G. Oliver, the purchaser and third possessor, but in a government like ours, every one is bound, at his peril, to know the law applicable to his case; and if he mis-apprehends it, he must take the consequences. He cannot make his own mistake a ground to defeat the legal rights of others.

*Judgment affirmed.*